IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARTIN S. CARROLL,          )      CASE NO. 1:09 CV 1232
                              )
          Plaintiff,      )
                              )
          v.            )      MAGISTRATE JUDGE McHARGH
                              )
MICHAEL J.ASTRUE,         )
Commissioner                 )
of Social Security,         )      **MEMORANDUM OPINION**
                              )
          Defendant.     )

This case is before the Magistrate Judge pursuant to Local Rule.  The main issues before the undersigned are the following: (1) whether there is objective medical evidence that Plaintiff's back pain was a severe impairment, and whether the ALJ erred in failing to articulate valid reasons that the back pain was not a severe impairment; (2) whether the ALJ erred in his assessment of the opinions of Plaintiff's medical and non-medical treating sources; (3) whether the ALJ failed to articulate valid reasons in discrediting Plaintiff, and (4) whether the ALJ based his residual functioning capacity ("RFC") findings on inadequate evidence when he used portions of the medical expert's testimony.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION and PROCEDURAL HISTORY

On August 22, 2005, Plaintiff Martin S. Carroll applied for Supplemental Security Income and Disability Insurance Benefits (Tr. 40, 265).  In his applications, Plaintiff alleged that he became disabled on November 1, 2004 due to the following impairments: back pain,

1

depression, poor memory, Attention Deficit Hyperactivity Disorder, traumatic brain injury by history, Anti-Social Personality Disorder, a panic disorder, and Bipolar disorder (Tr. 49, 93, 95, 180, 207). Plaintiff's applications for benefits were denied initially and upon reconsideration(Tr. 25, 29, 269, 273). Plaintiff then requested an administrative hearing (Tr. 24).  On October 22, 2008, Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge Robert Senander (the "ALJ") (Tr. 276-311). Dr. Joseph Cools, a psychological medical expert (the "ME"), and Barbara Burk, a vocational expert (the "VE"), also testified at the hearing (Tr. 276-311).

The ALJ issued a written decision on November 6, 2008 in which he found at Step Four of the five-step sequential evaluation[1] that Plaintiff retained the RFC to perform his past

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2)    If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3)    If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)    If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5)    Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

relevant work as a commercial cleaner, and, therefore, was not disabled (Tr. 13-14).  The ALJ also found that Plaintiff had the RFC to perform a limited range of work that involved simple, routine tasks, one, two, or three step jobs, no contact with the general public, casual contact with co-workers, and limited supervision (Tr. 14). The ALJ concluded that Plaintiff retained the capacity to perform his past relevant work as a commercial cleaner, and therefore, was not disabled (Tr. 15). Plaintiff requested review of the ALJ's decision from the Appeals Council (Tr. 6).  On April 11, 2009, the Appeals Council denied Plaintiff's request, thereby making the ALJ's determination the final decision of the Commissioner (Tr. 4-5). Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was 49 years old at the time of the ALJ's decision (Tr. 279). Plaintiff had a tenth grade education, but subsequently completed a high school general education development ("GED") diploma (Tr. 281).  He has past relevant work as a furniture deliveryman, as a general laborer in factories, and as a commercial cleaner (Tr. 282-84).

## II.  DISABILITY STANDARD

A claimant is entitled to receive DIB and/or SSI only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505; 416.915.

---

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

4

## IV. ANALYSIS

**A.      Whether there is objective medical evidence that Plaintiff's back pain was a severe impairment.  If not, whether the ALJ erred in failing to articulate valid reasons that the back pain was not a severe impairment.**

Plaintiff argues that the ALJ erred by failing to find that his back pain constituted a severe impairment.   The "severe impairment" determination at step two of the sequential analysis has been characterized as a "de minimis hurdle."  *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."); 20 C.F.R. § 416.920 (providing that a severe impairment is one which "significantly limits physical or mental ability to do basic work activities" and that "basic work activities" include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling").   The ALJ in this case impliedly found that Plaintiff's back pain was not a severe impairment through not making any mention of it in his findings (Tr. 12-15). As Plaintiff notes, the ALJ did not address evidence of a treating source indicating that back pain causes Plaintiff to be incapable of sustaining employment, (tr. 263), or evidence of a treating source prescribing pain medication for back pain (Tr. 79).  Also, Plaintiff alleges that the ALJ closed the record and did not allow further submission of medical records despite being put on notice that there were outstanding medical records, including an MRI, relating to back pain. (Doc. 15, at 11).

Plaintiff's argument, in part, is that the ALJ erred by failing to fully develop the record through refusing to "allow the Plaintiff an opportunity to submit evidence which would support" the treating physician's opinion, specifically the MRI report.  (Doc. 15, at 13).  Generally, the

ALJ has a duty to develop a reasonable record, and the ALJ must look fully into the issues.  20 C.F.R. §§ 404.944, 416.1444; *Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986).  However, the claimant has the burden of providing a complete record with enough evidence and detail to enable the ALJ to make a disability determination.  20 C.F.R. § 416.912; *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).

Pain alone may be sufficient to support a claim of disability.  *Grecol v. Halter*, 46 Fed. Appx. 773 (6th Cir. 2002).  However, a claimant's subjective assertions of pain, standing alone, will not suffice.  In most disability benefits cases, for the ALJ to find disabling pain, there must be: (1) objective evidence of an underlying medical condition; and (2) either, (a) objective medical evidence confirming the severity of the alleged pain arising from that medical condition, or (b) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986).

In the present case, Plaintiff only mentioned back pain at the hearing before the ALJ. When asked whether physical problems were at issue, Plaintiff responded that the back pain was developing currently, and that he just had an MRI the prior week (Tr. 303).  The record contained only Plaintiff's testimony as to the back problems and no objective evidence. Plaintiff cites to Dr. Conklin's evaluation of the back pain and the prescribing of drugs, but the evaluation and prescriptions were based solely on Plaintiff's complaints (Tr. 263-64).  Under *Duncan*, subjective complaints are not sufficient for a finding of disability based on pain.  *See Duncan*, 801 F.2d at 852-53; s*ee also McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (finding that claimant's subjective complaints were discounted when unsupported by

objective evidence).  The objective evidence that was available in the record did not support Plaintiff's complaints of back pain.  Rather, the objective evidence indicated that Plaintiff's had normal cervical spine x-rays and nearly normal strength in his legs, and did not need any ambulatory aids to walk (Tr. 263-64).

It is true that the ALJ must fully develop the record, but it is the claimant's burden to provide enough detail to enable the ALJ to make a disability determination.  *Landsaw*, 803 F.2d at 214.  Recently, this court rejected an argument stating that "if the ALJ needed more information regarding her condition, 'it was incumbent' upon him to seek out further evidence of disability." *Fagan v. Astrue*, 2010 WL 481278 at *6-7 (N.D. Ohio Feb. 5, 2010).  In *Fagan*, the ALJ did not need more information because substantial evidence supported the ALJ's determination, and the plaintiff had the "opportunity to seek out and introduce new evidence that could change the ALJ's mind." *Id.*

In the present case, Plaintiff claims that the ALJ had a duty to leave the record open because he was put on notice of the back pain at the hearing (Tr. 303). Towards the end of the hearing, Plaintiff's attorney mentioned that an MRI had taken place a week prior and that the issues with the back were currently developing (Id.). When asked whether any medical records were in the file regarding the back pain, Plaintiff's attorney said no (Id.).  Moreover, in referring to the MRI report, the attorney told Plaintiff that "I'll get it to him" (Tr. 304).  There is no indication that the attorney since then has filed any MRI report or offered any objective evidence as to the back pain.  Because the claimant has the burden of providing a complete record with enough evidence and detail to enable the ALJ to make a disability determination, Plaintiff's allegations that the ALJ failed to develop the record should be rejected.  *See* 20 C.F.R. § 416.912.

Furthermore, when a claimant is represented by an attorney, the ALJ may assume that the claimant has presented his strongest case for benefits. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Here, the attorney specifically told the ALJ that there are no medical records in the file regarding the back pain, and that there was only Plaintiff's testimony (Tr. 303). Without any records, the ALJ had no basis to form a determination regarding the back pain. Thus, the ALJ was justified in omitting any claims regarding back pain in his findings.

**B.    Whether the ALJ erred in his assessment of the opinions of plaintiff's medical and nonmedical treating physicians, as well as the opinion of the state consultative evaluator.**

Plaintiff argues that the ALJ erred by failing to articulate valid reasons for rejecting the opinions of Dr. Conklin, Dr. Jhee, Dr. Konieczny, Ms. Obias, and Ms. Bonner. (Doc. 15, at 7). The Court addresses separately below each of these opinions and the ALJ's respective treatment of those opinions.

**1.    Dr. Conklin**

Jeff Conklin, M.D., examined Plaintiff on October 5, 2008 (Tr. 263-64). Dr. Conklin noted that Plaintiff was limited to lifting five pounds both occasionally and frequently, standing for a total of two hours per eight-hour day, and sitting for a total of four hours per eight-hour day (Tr. 263). Dr. Conklin's report explained that Plaintiff experienced lower back and cervical spine pain, paraspinal tenderness of the lumbar spine area, with impaired flexion and extension, and 4+/5 strength in his upper and lower extremities (Id.). However, Dr. Conklin also noted that Plaintiff's cervical spine x-rays were normal (Id.). He indicated that Plaintiff could occasionally climb, balance, and crouch, but could rarely or never stoop, kneel, and crawl (Tr. 264). Plaintiff could also reach and handle occasionally, feel frequently, and push, pull, and

manipulate rarely (Id.). Dr. Conklin found that Plaintiff did not need any ambulatory aids, but did need a sit-stand option (Id.). Plaintiff was prescribed Oxycodone, Cyclobenzaprince, Naproxen, and Percocet for pain (Tr. 79-80).

Plaintiff complains that the ALJ did not give sufficient reasons for rejecting Dr. Conklin's opinion. He alleges that the ALJ failed to mention the evidence in the record supporting Dr. Conklin's opinion, and that the ALJ failed to mention what specific evidence does not support Dr. Conklin's opinion.

If the opinion of the claimant's treating physician is "well supported," it must be given "controlling weight." 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion typically should be afforded greater weight than those physicians who have examined the claimant on consultation or who have not examined the claimant at all. *See Meece v. Barnhard*, 192 Fed. Appx. 456, 461 (6th Cir. 2006); *Wilson*, 378 F.3d at 544; *Shelman*, 821 F.2d at 321; *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). However, an "ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, [and] may reject determinations of such a physician when good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988).

When it is found that the treating physician's opinion cannot be given controlling weight because it is inconsistent with other substantial evidence, then the ALJ is to assign the weight to be given through evaluating certain factors, specifically the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the

treating source. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(5). The ALJ then must provide "good reasons" for the weight given to a treating physician's opinion. *Wilson*, 378 F.3d at 545.

In order to be "good," those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188. Unless an ALJ's failure to adhere to this procedural requirement amounts to a harmless, *de minimis* procedural violation, the error is cause for remand. Specifically, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007).

The ALJ must give good reasons for the weight he [or she] gives to treating source opinions for two primary reasons. First, it allows claimants to understand the disposition of their cases, which is particularly important when a treating physician may have a different opinion than the ALJ. *Wilson*, 378 F.3d at 544 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Second, the requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *Id.* (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)).

A physician will qualify as a treating source if the physician sees the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th

Cir. 2007).   In *Smith*, a doctor was not deserving of treating source review when the doctor examined the claimant only once and wrote a single "physical capacity evaluation." *Id*.   In the instant case, Dr. Conklin was a treating physician because he evaluated the back pain, (tr. 263-64), and he had been prescribing drugs for pain from 2004 to 2006 and 2008 (Tr. 78-81).

The ALJ stated broadly that Dr. Conklin's opinion is "not supported by the evidence in the file" and that "no weight is given to that document" (Tr. 15).   Under circumstances in which the treating source's opinion is supported by objective data and/or medically accepted diagnostic techniques, such a terse explanation may not have complied with the requirement under SSR 96-2p.   *See Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural protection simply because there may be sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.")   For instance, a panel of the Sixth Circuit recently found in an unpublished decision that an ALJ's conclusory dismissal of a treating source's opinion was insufficient when there was nothing "patently deficient" with the doctor's opinion. *Friend v. Comm'r of Soc. Sec.*, 2010 WL 1725066 (6th Cir. Apr. 28, 2010).

However, if a "treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," a failure to give good reasons may not warrant reversal. *Wilson*, 378 F.3d at 547.   For instance, if a treating physician's conclusions are based, in large part, on plaintiff's subjective complaints, then the ALJ's decision to disregard the treating physician's opinion is proper. *Ladwig v. Comm'r of Soc. Sec.*, 39 Fed. Appx. 971, 977 (6th Cir. 2002).   In *Ladwig*, the court disregarded a treating source's opinion involving the plaintiff's crying spells

when there was a lack of objective evidence that the plaintiff actually suffered from crying spells. *Id.*

In the present matter, Dr. Conklin's evaluation of the back pain was based solely on Plaintiff's subjective complaints and not on objective medical evidence.  Dr. Conklin based his report of Plaintiff's functional limitations entirely on Plaintiff's subjective complaints of neck and back pain (Tr. 263-64).  Although Dr. Conklin restricted Plaintiff to lifting five pounds and was restricted to walking and standing to only two hours, the doctor found that Plaintiff had nearly normal muscle strength in upper extremities and legs (Id.).  Dr. Conklin also found Plaintiff's cervical spine x-rays to be normal, and that he did not need any ambulatory aids (Id.). As in *Ladwig*, substantial evidence supports the ALJ's determination to disregard Dr. Conklin's opinion because he based his evaluations solely on Plaintiff's subjective complaints of pain. Furthermore, the ALJ's reasoning, although somewhat terse and perhaps insufficiently detailed to constitute good reasons under different circumstances (*i.e.*, where the source's opinion has objective support), is sufficient in this case because Dr. Conklin's opinion – as the ALJ explained – is not supported by the "evidence in the file" (Tr. 15). Because Dr. Conklin's opinion was based on Plaintiff's subjective complaints and not supported by objective evidence, the ALJ did not err in rejecting it, and his explanation for discrediting that opinion sufficed under the circumstances.

### 2.      Dr. Jhee

Marianne Jhee, M.D., a psychiatrist at Center for Families and Children, reported that she first saw Plaintiff for psychiatric care on January 31, 2008 (Tr. 262.)  Plaintiff told Dr. Jhee that he had been diagnosed in 2004 with bipolar disorder, and prior to December 2007, had

received psychiatric care at Lake Erie Correctional Institute, where he had been incarcerated (Id.). When Dr. Jhee first met Plaintiff, he was already taking Lithium (a mood stabilizing medication), Wellbutrin (an anti-depressant), Celexa (an anti-depressant and anti-anxiety medication), and Vistaril (an anti-anxiety medication) (Id.). As of September 18, 2008, Dr. Jhee had seen Plaintiff four times, and during this time, Plaintiff adhered to his medication and had not experienced any manic episodes (Id.).

Dr. Jhee further explained that Plaintiff experienced a number of symptoms even while on the medication.  For example, Dr. Jhee said that Plaintiff complained of residual depressive symptoms, including chronic depressed mood, chronic passive suicidal thoughts, low energy, and increased need for sleep (Id.).  She also noted that Plaintiff complains of irritability, a decreased frustration tolerance, an inability to socialize with others, and an inability to concentrate on tasks due to anxiety (Id.).

The ALJ stated the following in discounting Dr. Jhee's opinions:

Regarding letter dated 9/18/19 (Exhibit 11F/1), from Dr. M. Jhee who is treating claimant since he got out of prison, it is consistent with the records and Dr. Cool's testimony.  Claimant has had no manic episodes since being followed and claimant is compliant with medication and AA for 3 years, with "moderate" anxiety and "mild" impaired concentration impressions.

(Tr. 15).

Plaintiff claims that the ALJ erred in his statement regarding Dr. Jhee's letter in two ways.  First, the ALJ failed to give good reasons for rejecting Dr. Jhee's opinion.  Second, the ALJ "picked and chose" different statements from Dr. Jhee's letter to further the ALJ's overall decision to deny disability benefits (Id.). Plaintiff avers that Dr. Jhee's letter, when viewed as a whole, clearly shows that he is disabled (Tr. 14).  In addition to the portions of Dr. Jhee's letter

13

that the ALJ cited, Dr. Jhee also stated that Plaintiff complains of irritability, depression, chronic suicidal thoughts, low energy, and an inability to socialize with others (Tr. 262).

Dr. Jhee qualifies as a treating source because he saw and examined Plaintiff four times from January 2008 through September 2008 (Tr. 262).   The Commissioner argues that there is substantial evidence to support the ALJ's decision in weighing Dr. Jhee's letter. (Doc. 17, at 17).   The ALJ found that Dr. Jhee's letter, (tr. 262), was consistent with the records and the ME's testimony (Tr. 15).  The ALJ further noted that Dr. Jhee stated that Plaintiff has not had any manic episodes under her care, Plaintiff is compliant with medication, regularly attends AA meetings, and only suffers from "moderate" anxiety and "mild" impaired concentration (Id.). However, the ALJ did not discuss other medical findings raised in Dr. Jhee's letter, including Plaintiff's complaints of chronically depressed mood, chronic passive suicide thoughts, low energy, irritability, reclusive behavior, and a decreased frustration tolerance (Tr. 262).

Plaintiff contends that because the ALJ cited to the least limiting portions of Dr. Jhee's opinion, the ALJ wrongfully picked and chose evidence to support his determination that Plaintiff is not disabled.  *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (reversing a determination of non-disability when the ALJ "picked and chose" evidence by disregarding evidence of a doctor's determination that the claimant could not return to work, and that the claimant had been consistently diagnosed and treated for mental impairments); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) (finding that Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, was improper); *Rothgeb v. Astrue*, 626 F. Supp. 2d 797, 808 (S.D. Ohio 2009) (finding that the ALJ erred by ignoring treatment notes and taking other notes out of context).  However, there is no requirement that the ALJ must address every piece of evidence in the record in reaching his decision.  *Kornecky v.*

14

*Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006).   No purpose is served in remanding a case for the sole purpose of searching for the "perfect opinion," unless remand could lead to a different result.  *Id.* at 507 (*citing Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).  Additionally, it is well settled that:

> . . . an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id*. at 508 (*citing Loral Def. Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)).

In the present case, the ALJ did not mention portions of Dr. Jhee's letter that were based on Plaintiff's subjective complaints (Tr. 15).  Plaintiff alleges that the ALJ only cited to portions favorable to his position, but if a treating source's conclusions are based on the claimant's subjective complaints, then the ALJ's decision to disregard the conclusions are proper.  *Ladwig*, 39 Fed. Appx. at 977.  The portions of Dr. Jhee's letter that the ALJ did not raise were based on Plaintiff's subjective complaints.   For instance, Dr. Jhee stated, ". . . he still complains of residual depressive symptoms . . . He complains of irritability . . . He states that low self-esteem impairs his ability to socialize with others . . ." (Tr. 262).   Dr. Jhee did not support these complaints with objective medical findings, thus the ALJ was entitled to disregard them.

Moreover, Plaintiff fails to show how the RFC would change if the ALJ accommodated Dr. Jhee's findings to a greater degree.  The ALJ's determined RFC factored in jobs that would require simple, routine tasks, no contact with the general public, casual contact with co-workers, and limited supervision (Tr. 14).  This is consistent with Dr. Jhee's opinion that Plaintiff has difficulty socializing, experiences moderate anxiety, and has a decreased frustration tolerance

(Tr. 262). Because Plaintiff failed to show how Dr. Jhee's opinion is so inconsistent with the RFC, there is no reason to believe that remand would lead to a different result.

### 3. Dr. Konieczny

J. Joseph Konieczny, Ph.D., a psychologist and consultative evaluator, examined Plaintiff and evaluated his mental condition on December 2, 2005 (Tr. 176-81). He found that Plaintiff was clean, and adequately groomed and dressed (Tr. 177). During the evaluation, Plaintiff showed no signs of movement difficulties or physical discomfort, although he grew increasingly anxious as the evaluation progressed (Id.). Dr. Konieczny noted that Plaintiff was cooperative throughout the examination, did not show any indications of undue impulsivity, and denied experiencing any difficulty in controlling his temper (Id.). Plaintiff also spoke reasonably well and presented himself in a clear and coherent manner, and was also found to have an adequate ability to concentrate and attend to tasks (Tr. 177-78).

On the other hand, Dr. Konieczny reported that Plaintiff has some psychomotor agitation, mood swings, sleep difficulties, depression, occasional crying spells, anxiety problems, panic attacks two to three times per week, and significant agoraphobia (Id.). Additionally, tests revealed that Plaintiff had marked deficits in imagery, visual alertness and memory (Tr. 179). Finally, Dr. Konieczny found Plaintiff to have a global assessment of functioning ("GAF") score of 50 (Tr. 180).

20 C.F.R. § 404.1527 requires that an ALJ consider all findings by state agency consultants, who are also experts in Social Security disability evaluation. Social Security Ruling 96-6p indicates that ALJ's "may not ignore these opinions and must explain the weight given to these opinions in their decisions." SSR 96-6p, 1996 WL 374180. Furthermore, an ALJ cannot pick and choose which evidence to rely upon. *Loza*, 219 F.3d at 393; *Switzer*, 742 F.2d

16

at 385-86; *Rothgeb*, 626 F. Supp. 2d at 808.  On the other hand, the ALJ is not bound by any findings of the state evaluator, and although he must consider the evaluator's opinions, the ultimate question of disability is left to the ALJ's discretion.  20 C.F.R. § 404.1527(f)(2)(i). Also, there is no requirement to remand if there is no reason to believe that a different outcome could result had the opinion been fully addressed.  *Kobetic v. Comm'r of Soc. Sec.*, 114 Fed. Appx. 171, 173 (6th Cir. 2004) (quoting *Fisher*, 869 F.2d at 1057).

In the present case, the ALJ's entire evaluation of the consultative evaluator, Dr. Konieczny, states: "the earlier CE report (12/05) shows 'adequate' concentration, 'fair' insight, outside activities, cleaning, laundry, FSIQ 79, VIQ 87, PIQ 74" (Tr. 15).  However, the ALJ neglected to address that the evaluator also noted Plaintiff's mood swings, complains of difficulty sleeping, depression, anxiety, panic attacks two to three times per week, and significant agoraphobia (Tr. 177-78).  Dr. Konieczny also found problems with imagery, visual alertness, and memory, and found Plaintiff to have a 50 GAF score (Tr. 179).  Plaintiff alleges that the ALJ ignored the most significant findings in the CE's opinion that tended to suggest that he is disabled.  (Doc. 15, at 18).

While the ALJ is required to consider all the evidence, the ALJ does not have to address every piece of evidence in the record in reaching his decision.  *Kornecky*, 167 Fed. Appx. at 507-08.  In the present case, the ALJ did not list everything that Dr. Konieczny noted, but the ALJ's determined RFC accounted for Dr. Konieczny's findings.  The ALJ found that Plaintiff has the RFC to perform a full range of work, limited to "simple routine tasks, 1, 2, 3 step jobs, no contact with general public, casual contact with co-workers, and limited supervision" (Tr. 14).  This is consistent with Dr. Konieczny's opinions because he noted that Plaintiff has an adequate ability to attend to tasks, a moderate to severe inability to withstand stress, and a

17

moderate inability to relate to others, all of which the ALJ factored into the RFC (Tr. 15, 180). Furthermore, both Dr. Konieczny and the ALJ concluded that Plaintiff has the severe impairments of borderline intellectual functioning, brain injury, and depression (Tr. 12, 179-80). Overall, the ALJ's decision and Dr. Konieczny's opinion were compatible with each other leaving no reason to believe that remand would lead to a different outcome.

### 4.      Ms. Obias and Ms. Bonner

The ALJ must consider all of the available evidence in the individual's case record, including information from "other sources."  SSR 06-3p, 2006 WL 2329939.  Other medical sources may include, "physician assistants, licensed clinical social workers, naturpaths, chiropractors, audiologists, and therapists."  *Id*.  While information from other sources cannot establish the existence of an impairment, "the information may provide insight into the severity of the impairment."  *Id*.  Consideration of other medical sources other than "acceptable" treating sources are relevant because they have assumed a "greater percentage of the treatment and evaluation functions" as there is a higher emphasis on containing medical costs in recent years. *Id.*

20 C.F.R. §§ 404.1527(d) and 416.927(d) set out factors to consider in weighing medical opinions from treating sources, nontreating sources, and nonexamining sources.  These factors include: how long the source has known the claimant, how consistent the opinion is with other evidence, and how well the source explains the opinion.  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (quoting *Martin v. Barnhart*, 470 F. Supp. 2d 1324, 1328-29 (D. Utah 2006)).  The ALJ should explain the weight given to opinions for "other sources," or otherwise ensure that the decision allows a claimant to follow the reasoning "when such opinions may have an effect on the outcome of the case."  SSR 06-3p, 2006 WL 2329939.

Conversely, there is no requirement to remand if there is no reason to believe that a different outcome could result had the "other source's" opinions been assessed. *Kobetic*, 114 Fed. Appx. at 173 (quoting *Fisher*, 869 F.2d at 1057).

In the present case, the ALJ used boilerplate language stating that weight was given to "other opinion evidence," including acceptable medical sources, health care providers not otherwise acceptable medical sources, and non-medical sources (Tr. 15).  The ALJ did not, however, mention Ms. Obias or Ms. Bonner by name.  Ms. Bonner worked as Plaintiff's case manager for eleven months, and provided her assessment of Plaintiff in a letter dated 8 October 2008 (Tr. 83).  Ms. Bonner's letter provides insight into the severity of Plaintiff's impairments because she worked with him for several months and experienced many of his symptoms first hand.  The Commissioner argues that Ms. Bonner's opinion would not affect the outcome of the case because it is consistent with the expert medical testimony.  (Doc. 17, at 16).  However, Ms. Bonner did not simply state that Plaintiff was not very active and unsocial (Tr. 83).  She stated that she personally witnessed Plaintiff's anxiety attacks, manic depression, suicidal ideations, paranoia, and audible hallucinations (Id.).

Similarly, the ALJ neglected to mention Ms. Obias' report regarding Plaintiff's impairment (Tr. 206-07).  Ms. Obias conducted the "initial psychiatric evaluation"on 7 December 2007 after Plaintiff spent two years in prison (Tr. 206).  Again, according to the Commissioner, Ms. Obias' evaluation is consistent with Dr Cool's expert medical testimony because she found Plaintiff to be well oriented, groomed, of average intelligence, and physically healthy (Tr. 207).  However, Ms. Obias also described Plaintiff as severely depressed, anxious, and irritable (Id.).  She found that Plaintiff has difficulty concentrating and holds delusions that

people are always talking about him (Id.).  Overall, a 40 GAF score was assessed, and Plaintiff

was diagnosed with Bipolar disorder (Id.).

Plaintiff contends that Ms. Obias' and Ms. Bonner's opinions should have been

addressed more directly because doing so would "ensure that the discussion of the evidence in

the determination or decision allows a claimant . . . to follow the adjudicator's reasoning, when

such opinions may have an effect on the outcome of the case."  (Doc. 15, at 16-17).  However,

the ALJ's opinion as a whole sufficiently addressed the evidence and consisted of more than

mere conclusory statements.  *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)

(finding that the ALJ erred in use of boilerplate language when he simply gave a conclusory

statement following the boilerplate language without citing to any evidence in the record).

Rather, the ALJ cited to the opinions of Dr. Conklin, Dr. Jhee, and Dr. Konieczny in his

credibility determination (Tr. 15).  Because there is no requirement that the ALJ address every

piece of evidence in his findings, the boilerplate language sufficiently addresses the opinions of

Ms. Obias and Ms. Bonner when considering what else the ALJ did besides state boilerplate

language.  *See Kornecky*, 167 Fed. Appx. at 508.

Furthermore, Plaintiff has not shown how a different outcome could result had the

"other source's" opinions been assessed more specifically in the written opinion.  *See Kobetic*,

114 Fed. Appx. at 173.  The ALJ found that Plaintiff had the following severe impairments:

borderline intellectual functioning, brain injury, Bipolar disorder depression, and alcohol and

cocain abuse (Tr. 12).  While considering these impairments, the ALJ determined that the

claimant had the RFC to perform simple routine tasks, one, two, and three step jobs, with no

contact with the general public, casual contact with co-workers, and limited supervision (Tr.

14).  The determined RFC did not preclude Plaintiff from performing past relevant work as a

commercial cleaner (Tr. 15).  It is true that Ms. Obias and Ms. Bonner stated that Plaintiff has panic attacks, experiences depression, difficulty in concentration, and deficits in social functioning.  (Doc. 18, at 4).  However, Plaintiff did not show how these opinions would affect the severe impairments that the ALJ noted, or how they would change the RFC.  Thus, remanding on this issue would be an "idle and useless formality."  *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 (1969).

**C.     Whether the ALJ failed to articulate valid reasons in discrediting Carroll.**

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment or measures, other than medication, taken to relieve pain; and any other factors concerning the individual's functional limitations.  20 C.F.R. § 416.929(c)(3)(i)-(vii).  If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  In *Wines v. Comm'r of Soc. Sec.*, 268 F.Supp.2d 954, 961 (N.D. Ohio 2003), the court remanded when the ALJ failed to properly articulate his reasons for finding the claimant's subjective complaints of pain were not credible.  At the same time, the ALJ's determination as to credibility is entitled to deference because he has the opportunity to observe the claimant and assess her subjective complaints. *Buxton*, 246 F.3d at 773.

In the present case, the ALJ stated that Plaintiff's statements concerning intensity, persistence, and limiting effects were not credible (Tr. 14).  The ALJ gave several reasons for his finding on credibility.  First, the determined RFC was inconsistent with Plaintiff's complaints (Id.).  The RFC showed that Plaintiff could work jobs with simple routine tasks,

provided that he had no contact with the general public, only casual contact with co-workers, and limited supervision (Id.).  Second, the ALJ reasoned that Plaintiff's complaints were not credible because they were inconsistent with the objective evidence.  For instance, Plaintiff had GAF scores between 65 and 70, "Dr. Conklin's opinion of less than sedentary RFC was not supported by the evidence," "claimant was physically healthy," and Dr. Jhee and Dr. Konieczny's findings were consistent with the ME's testimony (Tr. 14-15).  Thus, the ALJ adequately articulated his reasons for the credibility finding.

**D.    Whether the ALJ based his RFC findings on inadequate evidence when he used portions of the ME's testimony.**

The purpose of the medical expert is to advise the ALJ on medical issues, answer specific questions about the claimant's impairments, the medical evidence, the application of the listings, and functional limitations based on the claimant's testimony and the record.  § 416.927(f)(2)(iii); HALLEX I-2-5-32.  Medical expert testimony consistent with the evidence of record represents substantial evidence to support the Commissioner's decision. *See Barker v. Shalala,* 40 F.3d 789, 794-95 (6th Cir. 1994); *Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989).  Additionally, it is proper for the ALJ to rely on medical expert testimony in order to resolve conflicts between medical opinions. *See Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *Schumer v. Comm'r of Soc. Sec.*, 109 Fed. Appx. 97, 101 (6th Cir. 2004).  As the ALJ noted in his written decision:

> Dr. Cools testified, in relevant part, that the medical evidence of record since November 1, 2004, shows brain injury, substance abuse, and depression, but not meeting or equaling a listing. . . . Dr. Cools noted claimant was not cognitively impaired and that his real problem was his personality with impulsivity.  He was hospitalized [2004] with mood disorder, rule out bipolar II and also using alcohol/cocaine; mood swings [7/04], DA&A; by 2005 depressed, but doing fine on medication [1/05], and "mildly depressed" [9/05]; diagnosed bipolar I, depressed with psychotic symptoms, hypomania, racing thoughts [12/07]; denied

22

depression [1/08]; medication can affect concentration, . . . and social problems, e.g. no contact with general public, casual contact with co-workers, can have supervision, if not critical.  He had a head injury and lots of substance abuse, per Dr. Cools, who also opined that it was unlikely claimant would have more than verbal conflicts with others.

(Tr. 13).

Plaintiff alleges that the testifying ME's opinion was inconsistent with the RFC rendered by the ALJ.  (Doc. 15, at 19-20).  Plaintiff specifically cites to Dr. Cools' testimony that the Plaintiff might make sarcastic comments, get into verbal arguments, and possibly end up walking off of jobs (Tr. 301).  However, Dr. Cools only stated that these potential issues were the worst case scenario (Id.).  He did not state that Plaintiff would definitely do these things.  In fact, Dr. Cools testified that there "doesn't seem to be any potential for decompensation as long as he's taking his medication" (Id.).  Thus, the ALJ adequately addressed the ME's testimony because the portions excluded from the RFC were not substantiated by objective medical evidence, and were merely conjectural.  *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) (noting that the ALJ is not obliged to take into consideration unsubstantiated claims when determining the RFC).

Furthermore, substantial evidence supports the conclusion reached by the ALJ.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (noting that an ALJ's "decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").  As in *Barker*, the use of Dr. Cools' testimony represents substantial evidence because it is consistent with the record, which contains Plaintiff's medical documents and treating sources' opinions (Tr. 296-302).  The ALJ properly relied on the expert's testimony in

23

assessing whether Plaintiff's impairments met any of the listed impairments and in assessing the RFC (Tr. 13-14).

## V. CONCLUSION

For the foregoing reasons, the Court finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: July 1, 2010.